Schubach, et al. *v.* Department of Public Welfare, et al. and Pine Hill Home, Inc., et al., Intervenor.

Argued January 5, 1972, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*J. Leon Rabben,* for plaintiff.

*Marx S. Leopold,* General Counsel, with him *J. Shane Creamer,* Attorney General, for defendants.

*Bernard J. Goodheart,* with him *Irvin Stander,* for Intervenor.

OPINION BY JUDGE WILKINSON, March 3, 1972:

This is an action in Equity to enjoin the granting of a license to operate a nursing home or revoke such license if issued. The fundamental question involved is the validity of the zoning where the nursing home will be operated. With either supreme confidence or reckless abandon the intervening defendants have constructed what is referred to as a Two Million Dollar nursing home while plaintiffs have contested the validity of the zoning. Pursuing their policy of construction during litigation, intervening defendants assert the home was 90% completed on October 9, 1970, when the Supreme Court of Pennsylvania declared the zoning invalid. *See Schubach v. Zoning Board of Adjustment,* 440 Pa. 249, 270 A. 2d 397 (1970).

On December 8, 1970, plaintiffs commenced an action in Equity in the Court of Common Pleas of Phila-

delphia to enjoin any further construction. On January 18, 1971, a new zoning ordinance was passed. The validity of this second ordinance then became and remains the central issue in the Common Pleas Equity action.

On January 29, 1971, the Supreme Court of Pennsylvania issued an order prohibiting the completion of construction *and prohibiting the operation* of the nursing home until after the termination of the litigation. On August 16, 1971, the Common Pleas Court entered a Decree Nisi ruling substantially in favor of intervening defendants, directing certain action to be taken by intervening defendants to prevent a nuisance, and stating that intervening defendants had been in violation of the Supreme Court's order. Both parties filed exceptions, the exceptions were argued, and at the time of the argument of this case, the Common Pleas Court *en banc* had not handed down a decision.

Following the Decree Nisi, the Department of Welfare notified the parties that it intended to act favorably upon the license application that was then pending. It was at that point that plaintiffs brought this action to enjoin the granting of the license. After the request for a preliminary injunction was denied by this Court, the Department granted the license.

The prudence of granting a license to do that which the Department had notice had been prohibited by the Supreme Court of Pennsylvania might well be questioned. Resolving all doubts in favor of the Department we take this to be its authority to the intervening defendants to operate if, as and when the intervening defendants are in compliance with the Supreme Court order.

As is readly apparent from the above recitation of facts, the legality of the intervening defendants' operation of the nursing home here in question is now pending before the Common Pleas Court of Philadelphia

and the Supreme Court of Pennsylvania. We cannot see how plaintiffs can carry their fundamental burden of establishing that this Court should exercise its extraordinary powers of equity because they have no other adequate remedy. *See Rodes and De Szirmay v. Commonwealth of Pennsylvania*, 2 Pa. Commonwealth Ct. 328, 279 A. 2d 782 (1971). In the event the other pending actions are concluded without deciding all of the issues here presented, it would be appropriate at this time, should the plaintiffs wish to bring a new action in this Court, for us to decide whether the then remaining issues, if any, and parties are such as to give this Court equity jurisdiction.

### ORDER

The motion for summary judgment in favor of the defendants is granted.

---

DISSENTING OPINION BY JUDGE KRAMER:

I respectfully dissent.

The Pennsylvania Supreme Court on January 29, 1971, entered the following Order, which from my point of view directly affects the instant matter before this Court:

### "ORDER

"WHEREAS, Fred Schubach, et al., the appellants in an appeal to this Court to No. 356, January Term, 1969, have now presented to this Court a petition for a directive to the court below to enforce a decision of this Court rendered October 9, 1970; and

"WHEREAS, inter alia, said petition avers that both the appellee, the Zoning Board of Adjustment of the City of Philadelphia, and the intervening appellee, Pine Hill Home, Inc., have acted and are continuing to act in disregard and defiance of the decision of this Court dated October 9, 1970; and

"WHEREAS, there is now pending in the Court of Common Pleas of Philadelphia an action in equity filed December 8, 1970 (No. 325, December Term, 1970) to determine whether the appellee and/or intervening appellee is or are acting in disregard and defiance of the aforesaid decision of this Court,

"Now, this 29th day of January, 1971, it is hereby ordered and directed that the Court of Common Pleas of Philadelphia hear said equity action on February 4, 1971, without further delay or continuance and, after such hearing, speedily and expeditiously determine and adjudicate the matters involved in said action and immediately thereafter report said determination to this Court. *Pending such determination, it is directed that no further construction of the nursing home involved in this proceeding be continued nor any operation of said nursing home commenced.*

BY THE COURT:

JONES,

J." (Emphasis added.)

In defiance of that Order, as was found to be a fact by the lower court, Pine Hill, Inc., continued in the construction of its rehabilitation center. Contempt of court proceedings are now pending before the Supreme Court of Pennsylvania. In addition, the Court of Common Pleas of Philadelphia County has before it a case wherein it is questioned whether the Pine Hill Home, Inc., construction and operation are in conformity with the zoning laws of the City of Philadelphia. By virtue of the various actions pending before the courts of this Commonwealth, the future of Pine Hill Home, Inc., is unclear.

Although I recognize that neither the Commonwealth nor the Pennsylvania Department of Public Welfare was a party to the action before the Supreme Court, it

is my position that the Order of the Supreme Court, quoted above, stands as a barrier to the issuance of a license by the Department to Pine Hill Homes, Inc., to operate a convalescent center.

The majority opinion suggests that the plaintiffs have an adequate remedy at law to be found in the equity suit pending before the Common Pleas Court. Although it is admitted that the final determination of the equity suit may resolve the matter eventually, the purpose of the suit filed in this Court is to afford interim protection to the plaintiffs prior to the final determination of the equity suit. It matters not that at some future time it may be determined by the courts that Pine Hill Home, Inc., may or may not operate its structure as a convalescent home. What does have moment are events transpiring during the interim period. The Philadelphia equity suit fails to provide an adequate remedy and protection during the interim period.

The statute providing for the licensing of nursing homes (a convalescent center comes within the purview of that statute) is found in the Act of June 12, 1931, P. L. 510, as amended, 35 P.S. 424, et seq. It provides in Section 4, 35 P.S. 427, that a license be issued only after the Department of Welfare determines that all of the provisions of the Act and its rules and regulations have been satisfied. The Department's regulations provide that compliance with all municipal zoning requirements must be had prior to the issuance of a license. Here, a final determination as to zoning matters has not been made. Therefore, under the Department's own regulations, the license is not to be issued.

This matter becomes extremely complex in the light of the above-quoted Order of the Supreme Court. It strains the imagination of this writer to conceive of a more improper issuance of a license by a state regulatory agency than one wherein the highest court in this

Commonwealth has specifically ordered that the applicant be *denied permission to operate.* To assert that the mere issuance of a license in no way permits the applicant to operate in violation of the court order begs the question.

It is improper for a state regulatory agency to issue a license authorizing the operation of a business in the face of a court order issued by any court in this Commonwealth prohibiting such operations. To hold otherwise will bring chaos to administrative law and to the orderly administration of justice. From my point of view, to permit this license to be issued is an affront to the Supreme Court. To permit a regulatory agency, whose existence is by virtue of a legislative delegation of power, to issue a license in defiance of a court order does violence to the concept of the separation of powers so deeply imbedded in our constitutional form of government. If the Supreme Court Order is thought to be in error, or void, or moot, or improper for any reason, it is incumbent upon the aggrieved party to petition the Court for an amendment or a vacation to the Order. We must not allow a regulatory agency to ignore or defy a court order.

I would deny the defendants' Motion for a Summary Judgment, overrule the defendants' Preliminary Objections, and direct the defendants to file an answer.

Judge MENCER joins in this dissenting opinion.